IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SONAL N. DESAI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-846 (RDA/WEF) |
| | ) | |
| LOUIS DEJOY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Louis DeJoy and Erika Campbell-Harris's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim ("Motion to Dismiss"). Dkt. 6. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion to Dismiss, together with Defendants' Memorandum in Support (Dkt. 7), Plaintiff's Opposition (Dkt. 18), and Defendants' Reply (Dkt. 20), the Court GRANTS the Motion to Dismiss.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Sonal N. Desai ("Plaintiff") is a 60-year-old woman of East-Asian Indian national origin. Dkt. 1 ¶ 1. In bringing suit in this Court against Defendant Louis DeJoy, in his official capacity as the United States Postmaster General, and Defendant Erika Campbell-Harris, an

---

[1] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiff's Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

attorney for the United States Postal Service ("USPS"), Plaintiff alleges an array of grievances from her time as an employee with the USPS, where she has worked since May 14, 1994.  *Id.* ¶ 3.

Plaintiff explains that she suffered three work-related injuries during her tenure at the USPS, which have left her disabled.  *Id.* ¶¶ 4-8, 11.  In particular, Plaintiff claims that she suffered an injury affecting "her bilateral shoulders due to repetitive work" in 2004; an injury to her back in 2010; and an injury affecting "her neck, lower back, left hand, and bilateral upper extremities" "sustained . . . due to a lack of safety measures by the USPS" in 2017.  *Id.* ¶¶ 5-8.

Plaintiff first appears to take issue with how her claims for compensation for these injuries have been treated and addressed both within the USPS and within the Office of Workers' Compensation Program ("OWCP").  She alleges that: she was not provided with forms for her claim for "workman's compensation"; her claims were closed "due to inactivity"; her appeals for wage loss and medical treatment have been "unsuccessful"; her forms for workplace compensation have not been properly stored by the USPS; and her supervisors at the USPS have not filled out forms necessary for Plaintiff's disability compensation.  *Id.* ¶¶ 9, 15-17.

In a second set of complaints, Plaintiff alleges that the USPS has not accommodated her injuries and disabilities in the workplace.  Plaintiff asserts that, in December of 2012, while she was working at the Merrifield Consumer Affairs Office, she received no training for her work responsibilities and that the work required repetitive movement, which aggravated her lower back injury.  *Id.* ¶ 21.  Plaintiff further claims that, on August 14, 2018, following her latest injury, she "was not provided a medically required chair."  *Id.* ¶ 49.  Specifically, Plaintiff explains that when she "request[ed] the chair to be moved from the 'Unique Zip' to the 'Nixie Area,'" two of her co-workers refused to do so.  *Id.*  Plaintiff also asserts that, despite submitting two reasonable

accommodation requests (in 2010 and 2014), she was denied accommodation while two of her co-workers were granted similar accommodation requests in 2014.  *Id.* ¶ 52.

Plaintiff further alleges issues relating to her work assignments.  Specifically, Plaintiff claims that, on April 1, 2013, she was offered a position at the Merrifield Passport Office and was told that if she did not accept the position, her benefits would stop.  *Id.* ¶ 24.  Plaintiff asked to review the position before she decided to accept and claims that she was not given the opportunity to do so.  *Id.* ¶¶ 24-25.  Because Plaintiff refused to accept that job, her OWCP benefits were terminated.  *Id.* ¶ 26.  Later, on December 4, 2013, Plaintiff was offered a position as a "Nixie Clerk" that required her to work 8 hours a day, which she accepted with protest because of the hours required. *Id.* ¶¶ 29, 30.  Plaintiff further asserts that when she returned to work in August of 2017, she was not permitted to return to a prior modified assignment.  *Id.* ¶ 47.  Plaintiff additionally alleges that, in 2017, other employees received a letter informing them of a required shift start time change from 8:00 a.m. to 7:00 a.m.  *Id.* ¶ 39.  But when Plaintiff asked her supervisors if the change applied to her, they told her that they did not know, and Plaintiff was never notified regarding whether the change applied to her.  *Id.*

Plaintiff also raises a series of complaints regarding her pay and benefits, including that: her pay under her charge card does not reflect her paychecks; the USPS did not approve her FMLA leave; she has been denied union time; she had annual leave and sick leave taken from her paychecks without crediting in March of 2017; she has not been credited for two holidays worked; she has not been selected to work holidays since January 15, 2018; and the USPS failed to fill out short-term disability forms which has resulted in Plaintiff not receiving disability compensation. *Id.* ¶¶ 31, 43, 51, 53-54, 56, 58.

And finally, Plaintiff appears to allege that her employer found fault with her conduct. *Id.*
¶¶ 34-35. Specifically, Plaintiff alleges that she received a removal notice on May 4, 2015 for
misconduct and received a fourteen-day suspension on an unspecified date. *Id.*

### B. Procedural Background

Prior to filing suit in this Court, Plaintiff sought resolution of some of her claims before
the Equal Employment Opportunity Commission (the "EEOC"). In a December 21, 2017 Equal
Employment Opportunity ("EEO") complaint, which was given the hearing number identifier 570-
2019-00350X, Plaintiff brought claims of discrimination and retaliation, alleging that: (1) on
August 14, 2017, she was not allowed to return to her modified work assignment; (2) on August
15, 2017, she was not provided enough union time; (3) on August 14, 2017, she had not been
provided with a medically approved chair; and (4) on March 25, 2017, her claim for leave had not
been approved and she was not credited for annual leave and sick leave. Dkt. 1-4 at 2 (April 28,
2022 EEOC Decision on Request for Reconsideration).[2] And in a March 30, 2018 EEO complaint,
which was given the hearing number 570-2019-00001X, Plaintiff realleged her claims that (1) she
was not allowed to return to her modified work assignment and (2) that she was not credited for
annual leave and sick leave, and added allegations that (3) she had become aware that management
was deducting money from her paycheck to repay a debt; (4) she was not permitted to work certain
holidays; and (5) on March 17, 2018, her shift start time was not changed whereas other
employees' start times had been changed. *Id.* The EEOC ultimately resolved these claims in the

---

[2] Because the EEOC's April 28, 2022 decision denying Plaintiff's request for
reconsideration is a document that is "integral to the [C]omplaint" and is specifically incorporated
by Plaintiff, the Court can consider it in ruling on Defendants' Motion to Dismiss since there is no
dispute as to its authenticity. *Tucker v. Sch. Bd. of the City of Va. Beach*, No. 2:13-cv-530, 2014
WL 5529723, at \*8 n.4 (E.D. Va. Oct. 31, 2014) (quoting *Sec'y of State for Defence v. Trimble
Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

agency's favor and then denied Plaintiff's request for reconsideration of its decision on April 28, 2022.  *Id.* at 3.

After receiving a Right to Sue Notice on April 28, 2022, Plaintiff filed a Complaint in this Court on July 27, 2022.  Dkt. 1 ¶ IV.  On September 22, 2022, Defendants jointly filed the instant Motion to Dismiss, dkt. 6, along with a Memorandum in Support thereof, dkt. 7, moving the Court to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim.  On October 31, 2022, Plaintiff filed her Opposition to Defendants' Motion, dkt. 18, and on November 4, 2022, Defendants filed a Reply in support of their Motion, dkt. 20.

On April 20, 2023, the Court ordered Plaintiff to show cause as to why Defendant Erika Campbell-Harris should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) ("Show Cause Order").  Dkt. 24.  On April 27, 2023, Plaintiff responded to the Court's Show Cause Order, writing that she has "no objection" to the Court dismissing Defendant Erika Campbell-Harris from the instant case.  Dkt. 25.  Consequently, on May 2, 2023, the Court dismissed Defendant Erika Campbell-Harris from this matter, dkt. 28, and Louis DeJoy is now the only remaining Defendant.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Motion to Dismiss

Federal Rules of Civil Procedure Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject-matter jurisdiction.  In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

There are two ways in which a defendant may prevail on a 12(b)(1) motion.  First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219.  Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.*  However, conclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  Alternatively, a defendant may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).  Under this latter approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Here, Defendants attack Plaintiff's assertion of subject-matter jurisdiction pursuant to the first method, and argue that the Complaint, when viewed together with the EEOC Decision on Request for Reconsideration, fails to allege facts over which the Court can exercise subject-matter jurisdiction.

### B. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du*

*Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion."  *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014).  That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate.  *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III. ANALYSIS

In her Complaint, Plaintiff brings a wide array of claims under the following federal anti-discrimination statutes: Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act.  Dkt. 1 at 3-6.  Plaintiff also alleges a variety of claims under other federal statutes including the Whistleblower Protection Act ("WPA"), the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), and the Occupational Safety and Health Act ("OSHA").  In addition, Plaintiff brings claims under Virginia state law, citing the Virginia Values Act and "Title VII state law."  *Id.* at 3.  Lastly, Plaintiff asserts claims that do not appear to be explicitly based on a statute, writing that she is bringing claims under the "legal standard for discrimination act,"

for "unsafe work, work [indecipherable] & retaining notification," for "discriminatory significant change in benefits," and under the "NRP class action Sandra M. decision not applied to restore 12-3-13." *Id.* at 3.

Defendants now seek dismissal of Plaintiff's claims on several grounds. First, they contend that many of Plaintiff's allegations concerning the federal anti-discrimination statutes have not been properly exhausted and that the Complaint otherwise fails to state a claim under those statutes. Dkt. 7 at 10-20. Second, Defendants assert that Plaintiff's claims under the WPA are not fully exhausted and therefore must be dismissed for lack of subject-matter jurisdiction. *Id.* at 20-22. Third, they aver that Plaintiff does not have a cognizable claim under OSHA. *Id.* at 22. Fourth, Defendants argue that Plaintiff fails to state a claim under USERRA. *Id.* at 22-23. Fifth, they contend that neither of Plaintiff's state law claims are properly before this Court. *Id.* at 23-24. And finally, Defendants assert that Plaintiff's remaining claims are not cognizable or otherwise fail to state a claim. *Id.* at 25-27.[3] The Court addresses each category of claims in turn.

### A. The Federal Anti-Discrimination Statute Claims

#### 1. The ADA claims

As a threshold matter, this Court considers whether it has subject-matter jurisdiction over Plaintiff's ADA claims. Significantly, the Fourth Circuit has held that "the [USPS] is not subject to suit under the ADA," *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001), because the "USPS is not an 'employer' under the express terms of the Act," *Webster v. Henderson*, 32 F. App'x. 36, 41 (4th Cir. 2002). The Rehabilitation Act thus provides the sole grounds for any claim

---

[3] Defendants also move this Court to dismiss some of Plaintiff's federal law claims against Defendant Campbell-Harris, asserting that she is not a proper defendant on those claims. Dkt. 7 at 10. However, this argument is now moot given that the Court has already dismissed Campbell-Harris as a Defendant in this action. Dkt. 28.

based on Plaintiff's requests for disability accommodation and allegations of disability discrimination.  *See McNair v. Spencer*, No. 4:17-cv-38, 2018 WL 2147515, at *6 n.6 (E.D. Va. May 3, 2018) ("[T]he Rehabilitation Act is a federal employee's exclusive remedy for disability-related employment discrimination.").  Consequently, Plaintiff's ADA claims are dismissed for lack of subject-matter jurisdiction.

### 2. The remaining federal anti-discrimination statute claims

### a. Exhaustion

Before reaching the merits of the remaining federal anti-discrimination statute claims, the Court addresses whether those claims have all been properly exhausted.  "The applicable regulations" here "first require federal employees to consult an [EEO] counselor within forty-five days of the alleged discriminatory acts."  *McLaughlin v. Barr*, No. 1:19-cv-318, 2020 WL 869914, at *3 (M.D.N.C. Feb. 21, 2020) (citing 29 C.F.R. §§ 1614.105(a)(1)).  "At the conclusion of a counseling period, the employee has fifteen days to file a charge of discrimination with the agency."  *Id.* (citing 29 C.F.R. §§ 1614.105(d), (e), 1614.106(b)).  If a plaintiff elects to file a formal complaint, then she must generally wait for a Final Agency Decision ("FAD"), and "[o]nce a federal plaintiff receives a [FAD] on an EEO complaint, she must either file an appeal with the EEOC within 30 days, or file a civil action in federal court within 90 days."  *Fitten v. McCarthy*, No. 1:20-cv-676, 2021 WL 622432, at *4 (E.D. Va. Feb. 17, 2021) (citing 42 U.S.C. § 2000e-16(c)).  Where a plaintiff has appealed to the EEOC or sought reconsideration of that appeal, as Plaintiff has done here, she must then file a civil action in federal court within 90 days of the EEOC's "final decision on an appeal."  29 C.F.R. § 1614.407(b).

In addition to the timing provisions set forth above, this exhaustion requirement has a substantive component.  Specifically, after an employee includes allegations in an EEOC charge,

"[i]n any subsequent lawsuit alleging unlawful practices . . . a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). So when a plaintiff brings allegations in a federal lawsuit that "exceed the scope of the EEOC charge and any charges that would have naturally arisen from an investigation thereof, they are procedurally barred.'" *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 596 (2005)).

Here, Defendants first argue that the following allegations in Plaintiff's Complaint are all time-barred: that she received a notice of removal on May 4, 2015 and a 14-day suspension, that she was offered a role in October 2013 that she ultimately did not take, that her shift changed in 2014, and that her employer denied her accommodation request in 2014. Dkt. 7 at 7-8. With respect to the first allegation, Defendants aver that it was part of a prior EEO complaint that the EEOC resolved in the USPS's favor on September 25, 2018. *Id.* at 7, Ex. 2 (September 25, 2018 EEOC decision affirming the agency's final order in favor of the USPS on appeal).[4] Defendants further assert that the other allegations likewise track a prior EEO complaint that the EEOC resolved in the USPS' favor on September 28, 2018. *Id.*, Ex. 3 (September 28, 2018 EEOC decision affirming the agency's final order in favor of the USPS on appeal).[5] In response, Plaintiff

---

[4] Although the EEOC's September 25, 2018 decision is not attached to Plaintiff's Complaint, but rather, is filed as an exhibit to Defendants' Motion to Dismiss, this Court may consider it for purposes of resolving the instant Motion to Dismiss because it is central to Plaintiff's claim that she exhausted administrative remedies and Plaintiff does not dispute its authenticity. *See Bowie v. Univ. of Md. Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint."); *Robinson v. Durham Pub. Sch. Bd. of Educ.*, 2014 WL 3894368, at *4 n.3 (M.D.N.C. Aug. 7, 2014) (considering an EEOC Charge that the defendant attached to the motion to dismiss because the plaintiff relied on the Charge for exhaustion of administrative remedies and the plaintiff did not appear to contest the authenticity of the Charge).

[5] For the same reasons explained *supra* note 4, this Court can consider the EEOC's September 28, 2018 decision in ruling on Defendants' Motion to Dismiss.

provides a general statement that she engaged the EEO process over the last 12 years and did "not c[o]me directly to court," and notes that she had "four EEO complaints [that] changed all the time" over a twelve year period.  Dkt. 18 at 2.

But the fact that Plaintiff filed EEO complaints is irrelevant if she did not timely bring them to federal court.  Indeed, having reviewed the record, it appears that Plaintiff has not filed any lawsuits in federal court based on either the September 25, 2018 or the September 28, 2018 EEOC decision within 90 days.  Accordingly, this Court finds that none of the allegations the EEOC considered in those two decisions have been properly exhausted.

Defendants next contend that each of Plaintiff's remaining allegations, except for those that the EEOC resolved in its April 28, 2022 decision denying Plaintiff's request for reconsideration, are outside the scope of her EEOC complaints, and are therefore not properly before this Court.  Plaintiff, on the other hand, maintains that she has exhausted remedies based on the Notice of Right to Sue letter that she received from the EEOC on April 28, 2022 following the EEOC's denial of her motion for reconsideration.  Dkt. 1 ¶ IV.  To that end, Plaintiff attaches the EEOC's April 28, 2022 decision to her Complaint.  Dkt. 1-4.

Critically, Plaintiff's allegations and attached material demonstrate that she only had six allegations at issue in that decision, and thus, only those allegations are properly exhausted, not the vast remainder of allegations contained in Plaintiff's Complaint.[6]  Consequently, this Court

---

[6] While Plaintiff's December 21, 2017 EEO complaint contained four allegations and her March 30, 2018 EEO complaint contained five, the latter repeated two of the allegations included in the former and only contained three unique allegations—that management was deducting money from Plaintiff's pay to repay a debt, that she was not permitted to work on certain holidays, and that her shift time was not changed.  Dkt. 1-4 at 2.  Further, Plaintiff's allegation in the March 30, 2018 EEO complaint that management was deducting money from her paycheck was never properly before the EEOC.  In its decision on appeal, the EEOC found that such a claim was covered by the Debt Collection Act, and the EEOC's regulations do not convey it with jurisdiction to decide such matters.  Dkt. 7, Ex. 1 (December 6, 2021 EEOC Decision on Appeal).  Thus, only

finds that the only allegations (related to discrimination) that are properly before it are Plaintiff's allegations that she: was not allowed to return to her modified work assignment; was not provided enough union time; was not provided with a medically approved chair on August 14, 2017; her claim for leave had not been approved in March 2017 and she was not credited for annual leave and sick leave; she was not permitted to work on certain holidays; and that on March 17, 2018 her shift start time was not changed. *Id.* at 2. As a result, the scope of this Court's review of Plaintiff's anti-discrimination claims will be limited to claims premised on the above-identified allegations.

### b. Failure to state a claim

The Court now turns to whether Plaintiff has plausibly stated (1) discrimination claims under Title VII, the ADEA, or the Rehabilitation Act; (2) a failure-to-accommodate claim under the Rehabilitation Act; or (3) a retaliation claim pursuant to Title VII, the ADEA, or the Rehabilitation Act.

### i. The discrimination claims

Defendants argue that Plaintiff's Complaint fails to state a claim for discrimination under Title VII, the ADEA, or the Rehabilitation Act because Plaintiff fails to allege any non-conclusory facts plausibly demonstrating that she was discriminated against on the basis of her race, color, national origin, age, and/or disability. Dkt. 7 at 13.

Title VII provides that "[a]ll personnel actions affecting employees" of the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), and provides a cause of action in federal district court for violation of this prohibition, *see id.* § 2000e-16(c). Likewise, the ADEA prohibits the federal

---

two allegations from Plaintiff's March 30, 2018 EEO complaint are properly before this Court, bringing the total number of properly exhausted allegations to six.

government from taking a "personnel action" discriminating against an employee who is 40 or older because of her age.  29 U.S.C. § 633a(a).  And the Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

"Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 627 (4th Cir. 2015) (applying similar framework as to ADEA claims); *see also Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 316 n.9 (4th Cir. 2017) (similar framework as to Rehabilitation Act claims).[7]

Here, Plaintiff sufficiently alleges her membership in a protected class on the basis of her race (Asian), color (brown), age (born in 1962), and disability (alleging injuries to her shoulders, neck, and hands).  Dkt. 1 ¶ III.  Plaintiff's allegations fail to plausibly plead any of the remaining elements of a discrimination claim, however.  As an initial matter, Plaintiff has not made any allegations of a satisfactory job performance on her part.  Further, the allegations that Plaintiff has exhausted do not amount to adverse employment actions.  For instance, Plaintiff complains that she was not given her preferred work assignment, she was not permitted to work holidays, and her shift time was not changed.  Dkt. 1 ¶¶ 33, 47, 55.  However, these are the kind of minor employer actions concerning work assignments that the Fourth Circuit has found to be insufficient to

---

[7] Plaintiff's Complaint does not appear to contain any direct evidence of discrimination. Nor does her Opposition point to any.

constitute an adverse action.  *See Richardson v. Richland Cnty. Sch. Dist. No. One*, 52 F. App'x 615, 616 (4th Cir. 2002) (concluding that teacher's assignment to undesirable classroom not adverse action); *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (explaining that the "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action").

Additionally, to satisfy the final element of a *prima facie* discrimination case, Plaintiff must identify a "similarly situated individual outside of the protected class who was treated differently [from her]."  *Robinson v. Loudoun Cnty. Pub. Sch.*, No. 1:16-cv-1604, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017).  In the instant case, Plaintiff does point to comparators—she claims that "[t]wo of her colleagues (Mr. Majid and Ms. Parks) who had similar requests [for accommodation] had their request approved in 2014."  Dkt. 1 ¶ 52.  Critically, however, Plaintiff's Complaint is devoid of any allegations that these comparators were *similarly situated* to her.  Specifically, her Complaint does not allege what kind of requests for accommodation the comparators submitted or that they were subject to the same supervisors or standards as her.  *See Guillen v. Esper*, No. 1:19-cv-1206, 2020 WL 3965007, at *11 (E.D. Va. July 13, 2020) (dismissing claim where the plaintiff "provided virtually no details about the specific job titles, responsibilities, or qualifications of the individuals she identifies as her comparators"); *Yin v. CTI Consultants, Inc.*, No. 3:17-cv-296, 2018 WL 1569486, at *7 (E.D. Va. Mar. 30, 2018) (declining to give bare allegation of "similarly situated" employees any "talismanic" meaning and dismissing claim).  Because Plaintiff has not sufficiently pleaded satisfactory job performance, adverse employment action, or different treatment from similarly situated employees outside the protected class, her discrimination claims under Title VII, the ADEA, and the Rehabilitation Act are dismissed.

14

ii. The failure-to-accommodate claim

Plaintiff's Complaint, when read liberally, also appears to contain a failure-to-accommodate claim under the Rehabilitation Act.  *See, e.g.*, Dkt. 1 ¶¶ 47, 49, 52 (raising requests for accommodation from 2010, 2014, and 2017).  As previously noted, only Plaintiff's claim regarding a requested accommodation in 2017 is exhausted and properly before this Court. Specifically, Plaintiff alleges that she "was not provided a medically required chair in the Nixie area," and that, when she "request[ed] the chair to be moved from the 'Unique Zip' to the 'Nixie Area,'" two individuals named Dhillon and Singh allegedly complained that they were "not [Plaintiff's] servant" and "not [her] maid." *Id.* ¶ 49.

To establish a failure-to-accommodate claim under the Rehabilitation Act, Plaintiff must plausibly allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position [] and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

In the instant case, Plaintiff does not plausibly plead that her employer, the USPS, refused to provide her a medically required chair.  Rather, it appears that Plaintiff's grievance is that two USPS employees did not take kindly to her request to move the chair for her.  Dkt. 1 ¶ 49 (noting that Plaintiff was "requesting the chair *to be moved*" (emphasis added)).  But such an allegation about a conflict amongst co-workers is insufficient to state a claim for failure to accommodate. *See Kelly v. Berryhill*, No. 1:18-cv-49, 2019 WL 1300816, at *5 (D. Md. Mar. 20, 2019) ("Ultimately, Title VII and the Rehabilitation Act are not 'a general civility code for the American workplace.'" (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998))).

Neither does Plaintiff allege anywhere in her Complaint that, with reasonable accommodation, she could perform the essential functions of her position.  Accordingly, Plaintiff's Rehabilitation Act failure-to-accommodate claim is dismissed.

### iii. The retaliation claim

Again, construing Plaintiff's Complaint liberally, Plaintiff appears to allege a claim for retaliation.  Dkt. 1 ¶ III (checking the box for "retaliation").  "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action."  *Coleman*, 626 F.3d at 190; *see also S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (same elements for Rehabilitation Act claim); *Krane v. Cap. One Servs., Inc.*, 314 F. Supp. 2d 589, 610 (E.D. Va. 2004) (same elements for ADEA retaliation claim).

Here, Plaintiff's retaliation claim fails for several reasons.  First, Plaintiff's Complaint contains no allegation that she engaged in any protected activity, let alone specific dates of any protected activity.  *See Guillen*, 2020 WL 3965007, at *1 (dismissing retaliation claim where there was a "lack of clarity" regarding the timing of Plaintiff's alleged protected activity, which "is particularly problematic in the context of a retaliation claim").  Second, even if Plaintiff's time-barred allegations regarding the removal notice and fourteen-day suspension that she received could serve to establish the adverse action element, Plaintiff does not allege that those actions were taken on the basis of Plaintiff engaging in any protected activity.  As such, Plaintiff's retaliation claim is dismissed.

### B. The WPA Claim

In addition to bringing claims under federal anti-discrimination statutes, Plaintiff asserts a claim under the WPA.  The exhaustion of remedies at the administrative level is a prerequisite to

filing suit under the WPA as a jurisdictional matter.  *See Kennebeck v. Napolitano*, No. 1:13-cv-88, 2013 WL 3368960, at *4 (E.D. Va. July 3, 2013) ("[C]ourts lack jurisdiction over WPA claims prior to administrative exhaustion.").  A plaintiff must first report a WPA claim to the Office of the Special Counsel and thereafter can seek corrective action from the Merit Systems Protection Board ("MSPB").  5 U.S.C. §§ 1214(a)(3), 1221.  Following a final order from the MSPB, cases raising solely WPA claims can only be appealed to the United States Court of Appeals for the Federal Circuit.  *See Afifi v. U.S. Dep't of Interior*, 924 F.2d 61, 62 (4th Cir. 1991) ("When it created the Federal Circuit, Congress vested the court with exclusive jurisdiction to hear appeals from final orders of the MSPB in federal personnel matters.").  In so-called "mixed cases" alleging claims of discrimination along with WPA claims, administrative exhaustion is still required but the action may proceed to federal district court so long as suit is brought 30 days following a "judicially reviewable action" from either the MSPB or the EEOC.  5 U.S.C. § 7703(b)(2); 5 U.S.C. § 7702.

Here, the closest Plaintiff comes to alleging that she ever brought a WPA claim before either the MSPB or the EEOC is an assertion in her Opposition that she "did complain everywhere," with a reference to the MSPB as one place where she "complain[ed]."  Dkt. 18 at 8. However, such a vague allegation is insufficient to establish this Court's subject-matter jurisdiction over her WPA claim.  *See Hogue v. McHugh*, No. 11-22405-CIV, 2011 WL 13261087, at *2 (S.D. Fla. Aug. 15, 2011) (dismissing WPA claim for lack of subject-matter jurisdiction where plaintiff failed to adduce evidence of an administrative WPA complaint and only otherwise offered "vague statements" of activity before the MSPB).  As a result, Plaintiff's WPA claim is dismissed for lack of subject-matter jurisdiction.

### C. The OSHA Claim

The Court next addresses Plaintiff's OSHA claim.  As an initial matter, Plaintiff does not identify how the federal government has waived its sovereign immunity from suit under OSHA. Such an omission is fatal to her OSHA claim because "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Patock v. Fox News Television Channel*, No. 1:11-cv-974, 2012 WL 695892, at *2 (E.D. Va. Mar. 1, 2012) (explaining that "[c]ourts generally do not have subject matter jurisdiction over claims against the federal government and its agencies due to the doctrine of sovereign immunity," and, "[a]s such, [a] [p]laintiff must establish that the claims asserted are authorized by a statutory waiver of sovereign immunity").[8]  Accordingly, Plaintiff's OSHA claim is dismissed for lack of subject-matter jurisdiction.

### D. The USERRA Claim

The Court now turns to Plaintiff's USERRA claim.[9]  Federal employees alleging claims against federal executive agencies[10] under USERRA must first file their claims using an administrative process set out by statute and, if the federal employee disagrees with a final

---

[8] Plaintiff's OSHA claim also fails for a second, independent reason.  Specifically, even if there were a waiver of sovereign immunity, it is well-established that OSHA does not provide a cause of action to litigants in federal court.  *See Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 197 (4th Cir. 1991) (holding that OSHA is a purely regulatory provision and does not create a private right of action); *Harik v. Wilson*, No. CV AW-05-1182, 2006 WL 8457020, at *1 (D. Md. May 15, 2006) ("[A] plaintiff may not premise a cause of action for damages upon a violation of an OSHA standard.").

[9] Plaintiff asserts that she is bringing suit under the "Reemployment Right Act [of] 1994." Dkt. 1 ¶ II.  Interpreting Plaintiff's Complaint liberally, it appears that she is citing the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA").

[10] Plaintiff's employer against whom she brings suit, the USPS, is defined as a "federal executive agency" under the express terms of USERRA.  38 U.S.C. § 4303(5).

administrative decision, the employee's recourse is to appeal that decision to the United States Court of Appeals for the Federal Circuit. *Claiborne v. Youngman*, No. 3:19-cv-113, 2020 WL 863977, at *4 (E.D. Va. Feb. 21, 2020) (citing 38 U.S.C. §§ 4322, 4324). Here, Plaintiff's USERRA claim fails at the outset because there is no allegation or record that she ever brought a USERRA claim through the compulsory administrative process. And even if Plaintiff had done so, she could not have brought a USERRA claim in federal district court. Consequently, Plaintiff's USERRA claim is dismissed for lack of subject-matter jurisdiction.

### E. The State-Law Claims

The Court next considers Plaintiff's state-law claims. In her Complaint, Plaintiff asserts that she is bringing claims under state law, citing the "VA Value Act" and "Title [six] VII state law." Dkt. 1 ¶ II. Presumably, Plaintiff is referring to the "Virginia Values Act," which "expanded protections for LGBTQ individuals accessing public accommodations." *Updegrove v. Herring*, No. 1:20-cv-1141, 2021 WL 1206805, at *1 (E.D. Va. Mar. 30, 2021) (citing Va. Code § 2.2-3904). And again, reading the Complaint liberally, it appears that Plaintiff may be referring to Virginia's state-law analogue to Title VII, the Virginia Human Rights Act. *See Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 522 n.13 (4th Cir. 2000) (describing the Virginia Human Rights Act as explicitly incorporating federal anti-discrimination law).

Neither claim is cognizable in this Court. As with the OSHA claim, Plaintiff has identified no waiver of sovereign immunity by the federal government as to any claims brought pursuant to these two state statutes. *Meyer*, 510 U.S. at 475.[11] Accordingly, Plaintiff's state-law claims are dismissed for lack of subject-matter jurisdiction.

---

[11] What's more, any discrimination and retaliation claims Plaintiff purports to bring under state law are precluded by the federal anti-discrimination statutes. *Pueschel v. United States*, 369 F.3d 345, 348 (4th Cir. 2004) (explaining that Title VII "establishes the exclusive and preemptive

F. The Remaining Claims

Finally, the Court turns to Plaintiff's claims for "unsafe, work [indecipherable] & retaining notification," "discriminatory significant change in benefits," and "NRP class action Sandra M decision not applied to restore 12-3-13." Dkt. 1 ¶ II.  Interpreted liberally, Plaintiff's complaints of an unsafe workplace could be read to allege a claim under the Federal Employment Compensation Act ("FECA"), given that "[a] FECA claim is the appropriate remedy when a federal employee's 'injuries are sustained while in the performance of his duty as a federal employee.'" *Richards v. C.I.A.*, 837 F. Supp. 2d 574, 579 (E.D. Va. 2011) (quoting *Wallace v. United States*, 669 F.2d 947, 951-52 (4th Cir.1982)).

But, as the Fourth Circuit has observed, FECA is an "exclusive remedy" and the Secretary of Labor has "exclusive authority to administer FECA and to decide all questions arising under FECA, including eligibility for benefits." *Wallace*, 669 F.2d at 951.[12]  As such, "if a claim is covered by FECA, the federal courts have no subject matter jurisdiction to entertain the case." *Aponte v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco, & Firearms*, 940 F. Supp. 898, 900 (E.D.N.C. 1996); *see also Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) ("[Employees are guaranteed the right [under FECA] to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the

---

scheme under which federal employees can seek redress for employment discrimination"); *Lassiter v. Reno*, 885 F. Supp. 869, 872 (E.D. Va. 1995) (dismissing disability discrimination claim under the Virginia Human Rights Act as "the Rehabilitation Act provides the exclusive means of redressing claims of handicap discrimination in federal employment").

[12] In fact, Plaintiff's own allegations suggest that she may have understood that her claims regarding workplace injuries fell under this exclusive, binding, remedial scheme. *Compare* Dkt. 1 at 7 (referring to claims Plaintiff submitted to "OWCP") *with* 20 C.F.R. § 10.1 (providing that the "Office of Workers' Compensation Programs" ("OWCP") has "responsibility for administering the FECA").

Government.").  This Court therefore lacks subject-matter jurisdiction over any claims related to an unsafe work environment.  Furthermore, Plaintiff's complaint of a "discriminatory" change in benefits appears to be a reference to her claims under the federal anti-discrimination statutes, which fail for the reasons previously discussed.

Lastly, in the interest of construing Plaintiff's Complaint liberally, this Court presumes that Plaintiff's reference to the "NRP class action Sandra M decision" is a citation to an administrative class action relating to the USPS's National Reassessment Process ("NRP") that was brought before and resolved by the EEOC.  *McConnell v. Potter*, EEOC Appeal No. 0720080054, 2010 WL 332083 (EEOC Jan. 14, 2010).  Plaintiff, however, does not allege what aspect of the "Sandra M decision" the USPS purportedly violated.  Moreover, if Plaintiff believes that the USPS is not adhering to the terms of the Sandra M decision, she is obligated—by regulation—to first inform the EEOC of this contention, and Plaintiff does not allege that she has.  *See* 29 C.F.R. § 1614.504(a) ("If the complainant believes that the agency has failed to comply with the terms of a . . . decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.").  Thus, even if Plaintiff had plausibly alleged some violation of the Sandra M decision, she cannot bring suit in this Court on that basis.  Consequently, each of Plaintiff's remaining claims are dismissed.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 6) is GRANTED; Plaintiff's Complaint is dismissed WITHOUT PREJUDICE.  If Plaintiff so chooses, she may file an Amended Complaint within thirty (30) days of this Order.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is

a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff's last address on file and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
May 18, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge