IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SONAL N. DESAI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-846 (RDA/WEF) |
| | ) |
| LOUIS DEJOY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Louis DeJoy's ("Defendant") Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim ("Motion to Dismiss"). Dkt. 41. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion to Dismiss together with Defendant's Memorandum in Support (Dkt. 42) and Plaintiff Sonal N. Desai's *pro se* Amended Complaint (Dkt. 38-1), the Court GRANTS the Motion to Dismiss for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Sonal N. Desai ("Plaintiff") is a 61-year-old Hindu woman of Indian national origin. Dkt. 38-1 § III.4. In her Amended Complaint, Plaintiff alleges a litany of grievances from her time as an employee with the United States Postal Service ("USPS"), where she has worked since May 14, 1994. *Id.* § I.3.

---

[1] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiff's Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

Plaintiff explains that she suffered three work-related injuries during her tenure at the USPS, which have left her disabled. *Id.* § III.5.d. In particular, Plaintiff claims that she suffered an injury affecting "her bilateral shoulders due to repetitive work" in 2004; an injury to her lower back in 2010; and an injury affecting "her neck, lower back, left hand, and bilateral upper extremities" in 2017. *Id.* § III.5.e., g., III.7.

Plaintiff appears to take issue with how her claims for compensation for these injuries have been treated and addressed both within the USPS and within the Office of Workers' Compensation Program ("OWCP"). *Id.* § III.6-7. She alleges that she was not provided with forms for her claims, that USPS officials called OWCP in an attempt to terminate Plaintiff's "workman's compensation," and that her claims for various workplace injuries were not approved. *Id.*

Plaintiff further alleges that the USPS has failed to accommodate her injuries and disabilities in the workplace. For instance, she claims that, on August 14, 2018, following her latest injury, she "was not provided a medically required chair . . . ." *Id.* § III.7.c. Plaintiff explains that when she "request[ed] the chair to be moved from the 'Unique Zip' to the 'Nixie Area,'" two of her co-workers refused to do so. *Id.* Plaintiff also asserts that, despite submitting two reasonable accommodation requests (in 2010 and 2014), she was denied an accommodation while two of her co-workers were granted similar accommodation requests in 2014. *Id.* § III.7.e. Plaintiff additionally claims that when she returned to work in August of 2017, she was not permitted to return to a prior modified assignment. *Id.* § III.7.

In another set of grievances, Plaintiff claims that the USPS engaged in "discriminatory conduct[]" when it: did not reinstate Plaintiff in a job that was similar to her previous assignment at USPS; terminated her employment twice in 2010 and 2013; allegedly harassed and retaliated against Plaintiff when another employee modified a "canvas sheet" that did not provide Plaintiff

with her preferred days off; did not allow Plaintiff to go to a union office; gave Plaintiff a pre-disciplinary interview; and investigated Plaintiff for misconduct. *Id.* § III.1.a.-e. Plaintiff additionally alleges that she was subjected to "harassment" when an individual named "Huyelinh L. Stephenson" was hired around the same time as Plaintiff, was allegedly chosen "[d]ue to favoritism and nepotism," and then "violated the Plaintiff's right to have privileges based on seniority . . . ." *Id.* § III.1.d.

Plaintiff also raises a series of grievances regarding her pay and benefits, including that she has been denied union time, that she has had annual leave and sick leave taken from her paychecks without crediting, that she has not been credited for two holidays worked, and that she has not been selected to work holidays since January 15, 2018. *Id.* § III.7.e.-f.

### B. Procedural Background

Prior to filing suit in this Court, Plaintiff sought resolution of some of her claims before the Equal Employment Opportunity Commission (the "EEOC"). In a December 21, 2017 Equal Employment Opportunity ("EEO") complaint, which was given the hearing number identifier 570-2019-00350X, Plaintiff brought claims of discrimination and retaliation, alleging that: (1) on August 14, 2017, she was not allowed to return to her modified work assignment; (2) on August 15, 2017, she was not provided enough union time; (3) on August 14, 2017, she had not been provided with a medically approved chair; and (4) on March 25, 2017, her claim for leave had not been approved and she was not credited for annual leave and sick leave. Dkt. 1-4 at 1-2 (April 28, 2022 EEOC Decision on Request for Reconsideration).[2] And in a March 30, 2018 EEO complaint,

---

[2] Because the EEOC's April 28, 2022 decision denying Plaintiff's request for reconsideration is a document that is "integral to the [Amended C]omplaint" and is specifically incorporated by Plaintiff, the Court can consider it in ruling on Defendant's Motion to Dismiss since there is no dispute as to its authenticity. *Tucker v. Sch. Bd. of the City of Va. Beach*, No.

3

which was given the hearing number 570-2019-00001X, Plaintiff realleged her claims that (1) she was not allowed to return to her modified work assignment and (2) that she was not credited for annual leave and sick leave, and added allegations that (3) she had become aware that management was deducting money from her paycheck to repay a debt; (4) she was not permitted to work certain holidays; and (5) on March 17, 2018, her shift start time was not changed whereas other employees' start times had been changed. *Id.* at 2. The EEOC ultimately resolved these claims in the agency's favor and then denied Plaintiff's request for reconsideration of its decision on April 28, 2022. *Id.* at 3.

After receiving a Right to Sue Notice on April 28, 2022, Plaintiff filed a Complaint in this Court on July 27, 2022 against Defendant Louis DeJoy, in his official capacity as the United States Postmaster General, and Defendant Erika Campbell-Harris, an attorney for the USPS. Dkt. 1 § IV. On September 22, 2022, Defendants DeJoy and Campbell-Harris jointly filed a Motion to Dismiss. Dkt. 6. Later, on April 20, 2023, the Court ordered Plaintiff to show cause as to why Defendant Erika Campbell-Harris should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) (the "Show Cause Order"). Dkt. 24. On April 27, 2023, Plaintiff responded to the Court's Show Cause Order, writing that she has "no objection" to the Court dismissing Defendant Erika Campbell-Harris from the instant case. Dkt. 25. Consequently, on May 2, 2023, the Court dismissed Defendant Erika Campbell-Harris from this matter, Dkt. 28, and DeJoy became the only remaining Defendant. On May 18, 2023, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's Complaint without prejudice and with leave to amend. Dkt. 30 at 21.

---

2:13-cv-530, 2014 WL 5529723, at *8 n.4 (E.D. Va. Oct. 31, 2014) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

On June 8, 2023, Plaintiff filed a Motion for Extension of Time to File Amended Complaint, Dkt. 31, which Magistrate Judge William E. Fitzpatrick granted on June 14, 2023, Dkt. 32. Thereafter, on August 7, 2023, Plaintiff filed a Second Motion for Extension of Time to File Amended Complaint, Dkt. 33, which Magistrate Judge Fitzpatrick again granted on August 10, 2023, Dkt. 34. Plaintiff subsequently filed her Amended Complaint on October 17, 2023. Dkt. 38-1. On October 30, 2023, Defendant DeJoy filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, Dkt. 41, along with a Memorandum in Support thereof, Dkt. 42. To date, Plaintiff has not filed an opposition or responded in any way to Defendant's Motion to Dismiss.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Motion to Dismiss

Federal Rules of Civil Procedure Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject-matter jurisdiction. In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, and as Defendant DeJoy does here, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* However, conclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). Alternatively, a

defendant may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Under this latter approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## B. Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (*quoting Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (*citing Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes her filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014). That a *pro se* complaint should be liberally

construed neither excuses a *pro se* plaintiff of her obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into her advocate. *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

## III. ANALYSIS

In her Amended Complaint, Plaintiff brings many of the same claims that she asserted in her initial Complaint. Specifically, she again brings a wide array of claims under the following federal anti-discrimination statutes: Title VII of the Civil Rights Act, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Dkt. 38-1 § II.[3] Plaintiff also re-alleges claims under the Occupational Safety and Health Act ("OSHA"), the Federal Employees' Compensation Act ("FECA"), and the Virginia Human Rights Act ("VHRA"). *Id.*

Defendant DeJoy once again seeks dismissal of all of Plaintiff's claims. He first contends that many of Plaintiff's allegations concerning the federal anti-discrimination statutes have not been properly exhausted and that the Amended Complaint otherwise fails to state a claim under those statutes. Dkt. 42 at 1-2. Defendant next asserts that this Court lacks subject matter jurisdiction over Plaintiff's remaining claims under OSHA, FECA, and the VHRA. *Id.* at 2. The Court addresses each argument in turn.

### A. The Federal Anti-Discrimination Statute Claims

#### 1. The ADA claims

As a threshold matter, this Court considers whether it has subject-matter jurisdiction over Plaintiff's ADA claims. Significantly, the Fourth Circuit has held that "the [USPS] is not subject

---

[3] The only new claim that Plaintiff appears to bring in her Amended Complaint is a claim for hostile work environment under Title VII, the ADEA, and the Rehabilitation Act. Dkt. 38-1 § III.1.d.

7

to suit under the ADA," *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001), because the "USPS is not an 'employer' under the express terms of the Act," *Webster v. Henderson*, 32 F. App'x. 36, 41 (4th Cir. 2002). The Rehabilitation Act thus provides the sole grounds for any claim based on Plaintiff's requests for disability accommodation and allegations of disability discrimination. *See McNair v. Spencer*, No. 4:17-cv-38, 2018 WL 2147515, at *6 n.6 (E.D. Va. May 3, 2018) ("[T]he Rehabilitation Act is a federal employee's exclusive remedy for disability-related employment discrimination."). Accordingly, Plaintiff's ADA claims will be dismissed for lack of subject-matter jurisdiction.

2. The remaining federal anti-discrimination statute claims

a. Exhaustion

Before reaching the merits of the remaining federal anti-discrimination statute claims, the Court will address whether those claims have all been properly exhausted. "The applicable regulations" here "first require federal employees to consult an [EEO] counselor within forty-five days of the alleged discriminatory acts." *McLaughlin v. Barr*, No. 1:19-cv-318, 2020 WL 869914, at *3 (M.D.N.C. Feb. 21, 2020) (citing 29 C.F.R. §§ 1614.105(a)(1)). "At the conclusion of a counseling period, the employee has fifteen days to file a charge of discrimination with the agency." *Id.* (citing 29 C.F.R. §§ 1614.105(d), (e), 1614.106(b)). If a plaintiff elects to file a formal complaint, then she must generally wait for a Final Agency Decision ("FAD"), and "[o]nce a federal plaintiff receives a [FAD] on an EEO complaint, she must either file an appeal with the EEOC within 30 days, or file a civil action in federal court within 90 days." *Fitten v. McCarthy*, No. 1:20-cv-676, 2021 WL 622432, at *4 (E.D. Va. Feb. 17, 2021) (citing 42 U.S.C. § 2000e-16(c)). Where a plaintiff has appealed to the EEOC or sought reconsideration of that appeal, as

8

Plaintiff has done here, she must then file a civil action in federal court within 90 days of the EEOC's "final decision on an appeal." 29 C.F.R. § 1614.407(b).

In addition to the timing provisions set forth above, this exhaustion requirement has a substantive component. Specifically, after an employee includes allegations in an EEOC charge, "[i]n any subsequent lawsuit alleging unlawful practices . . . a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013). Accordingly, when a plaintiff brings allegations in a federal lawsuit that "exceed the scope of the EEOC charge and any charges that would have naturally arisen from an investigation thereof, they are procedurally barred." *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 596 (2005)).

In her Amended Complaint, Plaintiff alleges that she exhausted administrative remedies based on a "Notice of Right to Sue letter" that she received from the EEOC on April 28, 2022. Dkt. 38-1 § IV.3. But a review of that letter and the EEOC's April 28, 2022 decision denying Plaintiff's motion for reconsideration of a FAD—which provided Plaintiff with the notice of her right to sue—highlights that there were only six allegations[4] at issue in that decision that were properly exhausted. Dkt. 1-4. Thus, only those allegations are properly exhausted, not the vast remainder of allegations contained in Plaintiff's Amended Complaint. Consequently, this Court

---

[4] While Plaintiff's December 21, 2017 EEO complaint contained four allegations and her March 30, 2018 EEO complaint contained five, the latter repeated two of the allegations included in the former and only contained three unique allegations—that management was deducting money from Plaintiff's pay to repay a debt, that she was not permitted to work on certain holidays, and that her shift time was not changed. Dkt. 1-4 at 2. Further, Plaintiff's allegation in the March 30, 2018 EEO complaint that management was deducting money from her paycheck was never properly before the EEOC. In its decision on appeal, the EEOC found that such a claim was covered by the Debt Collection Act, and the EEOC's regulations do not convey it with jurisdiction to decide such matters. Dkt. 7, Ex. 1 (December 6, 2021 EEOC Decision on Appeal). Thus, only two allegations from Plaintiff's March 30, 2018 EEO complaint are properly before this Court, bringing the total number of properly exhausted allegations to six.

finds that the only allegations that are properly before it (for the purposes of the federal anti-discrimination statute claims) are Plaintiff's allegations that she: was not allowed to return to her modified work assignment; was not provided enough union time; was not provided with a medically approved chair on August 14, 2017; her claim for leave had not been approved in March 2017 and she was not credited for annual leave and sick leave; she was not permitted to work on certain holidays; and that on March 17, 2018 her shift start time was not changed. *Id.* at 2. As a result, the scope of this Court's review of Plaintiff's anti-discrimination claims will be limited to claims premised on the above-identified allegations.

### b. Failure to state a claim

The Court now turns to whether Plaintiff has plausibly stated (1) discrimination claims under Title VII, the ADEA, or the Rehabilitation Act; (2) a failure-to-accommodate claim under the Rehabilitation Act; (3) a retaliation claim pursuant to Title VII, the ADEA, or the Rehabilitation Act; or (4) a hostile work environment claim under Title VII, the ADEA, or the Rehabilitation Act.

### i. The discrimination claims

Defendant DeJoy argues that Plaintiff's Amended Complaint fails to state a claim for discrimination under Title VII, the ADEA, or the Rehabilitation Act because Plaintiff fails to allege any non-conclusory facts plausibly demonstrating that she was discriminated against on the basis of her race, color, national origin, age, and/or disability. Dkt. 42 at 13.

Title VII provides that "[a]ll personnel actions affecting employees" of the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-16(a), and provides a cause of action in federal district court for violation of this prohibition, *id.* § 2000e-16(c). Likewise, the ADEA prohibits the federal

government from taking a "personnel action" discriminating against an employee who is 40 or older because of her age.  29 U.S.C. § 633a(a).  And the Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Absent direct evidence,[5] the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."  *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Goode v. Cent. Virginia Legal Aid Soc'y, Inc.*, 807 F.3d 619, 627 (4th Cir. 2015) (similar framework as to ADEA claims); *see also Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 316 n.9 (4th Cir. 2017) (similar framework as to Rehabilitation Act claims).

Here, Plaintiff sufficiently alleges her membership in a protected class on the basis of her race (Asian), color (brown), religion (Hindu), sex (female), age (born in 1962), and disability (alleging injuries to her shoulders, neck, and hands).  Dkt. 38-1 ¶ III.4.  Plaintiff's allegations fail to plausibly plead any of the remaining elements of a discrimination claim, however.  As an initial matter, Plaintiff has not made any allegations of a satisfactory job performance on her part.  Further, the allegations that Plaintiff has exhausted do not amount to adverse employment actions.  For instance, Plaintiff complains that she was not given her preferred work assignment and that she was not permitted to work holidays.  Dkt. 38-1 § III.7., III.7.f.  However, these are the kind of minor employer actions concerning work assignments that the Fourth Circuit has found to be

---

[5] Plaintiff's Amended Complaint does not appear to contain any direct evidence of discrimination.

11

insufficient to constitute an adverse action. *See Richardson v. Richland Cnty. Sch. Dist. No. One*, 52 F. App'x 615, 616 (4th Cir. 2002) (concluding that teacher's assignment to undesirable classroom not adverse action); *see also James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (explaining that the "mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action").

Additionally, to satisfy the final element of a *prima facie* discrimination case, Plaintiff must identify a "similarly situated individual outside of the protected class who was treated differently [from her]." *Robinson v. Loudoun Cnty. Pub. Sch.*, No. 1:16-cv-1604, 2017 WL 3599639, at *4 (E.D. Va. Aug. 18, 2017).[6] In the instant case, Plaintiff does point to comparators—she identifies two employees who had their requests for a shift time change granted and three employees whom the USPS did not take pictures of despite them also being sent home for misconduct. Dkt. 38-1 § III.1.c., e. Critically, however, Plaintiff's Amended Complaint is devoid of any allegations that these comparators were *similarly situated* to her. Specifically, her Amended Complaint does not allege what kind of requests for accommodation the comparators submitted, what kind of misconduct they engaged in, or that they were subject to the same supervisors or standards as her. *See Guillen v. Esper*, No. 1:19-cv-1206, 2020 WL 3965007, at *11 (E.D. Va. July 13, 2020) (dismissing claim where the plaintiff "provided virtually no details about the specific job titles, responsibilities, or qualifications of the individuals she identifies as her comparators"); *Yin v. CTI*

---

[6] This Court recognizes that "Plaintiff[] [is] not required as a matter of law to point to a similarly situated comparator in order to prevail on a discrimination claim." *Hurst v. D.C.*, No. 15–1410, 2017 WL 908208. at *4, n.5 (4th Cir. Mar. 7, 2017) (per curiam) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)). However, because Plaintiff here has chosen to rely on comparators, "the validity of [her claim] depends upon whether th[ose] comparator[s are] indeed similarly situated." *Taylor v. Millennium Corp.*, No. 1:15–CV–1046, 2016 WL 927185, at *6 (E.D. Va. Mar. 4, 2016) (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010)).

*Consultants, Inc.*, No. 3:17-cv-296, 2018 WL 1569486, at *7 (E.D. Va. Mar. 30, 2018) (declining to give bare allegation of "similarly situated" employees any "talismanic" meaning and dismissing claim). Because Plaintiff has not sufficiently pleaded satisfactory job performance, adverse employment action, or different treatment from similarly situated employees outside of her protected class, her discrimination claims under Title VII, the ADEA, and the Rehabilitation Act will be dismissed for failure to state a claim.

### ii. The failure-to-accommodate claim

Plaintiff's Amended Complaint also brings a failure-to-accommodate claim pursuant to the Rehabilitation Act. Dkt. 38-1 § II. As previously noted, only Plaintiff's allegation regarding a requested accommodation in 2017 is exhausted and properly before this Court. Specifically, Plaintiff alleges that she "was not provided a medically required chair in the Nixie area," and that, when she "request[ed] the chair to be moved from the 'Unique Zip' to the 'Nixie Area,'" two individuals named Dhillon and Singh allegedly complained that they were "not [Plaintiff's] servant" and "not [her] maid." *Id.* § III.7.c.

To establish a failure-to-accommodate claim under the Rehabilitation Act, Plaintiff must plausibly allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position [] and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

In the instant case, Plaintiff does not plausibly plead that her employer, the USPS, refused to provide her a medically required chair. Rather, it appears that the crux of Plaintiff's grievance is that two USPS employees did not take kindly to her request to move the chair for her. Dkt. 38-

13

1 § III.7.c. (noting that Plaintiff was "requesting the chair *to be moved*" (emphasis added)). But such an allegation about a conflict amongst co-workers is insufficient to state a claim for failure to accommodate. *See Kelly v. Berryhill*, No. 1:18-cv-49, 2019 WL 1300816, at *5 (D. Md. Mar. 20, 2019) ("Ultimately, Title VII and the Rehabilitation Act are not 'a general civility code for the American workplace.'" (quoting *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998))). Neither does Plaintiff allege anywhere in her Amended Complaint that, with reasonable accommodation, she could perform the essential functions of her position. Accordingly, Plaintiff's Rehabilitation Act failure-to-accommodate claim will be dismissed for failure to state a claim.

### iii. The retaliation claim

Next, Plaintiff's Amended Complaint lists "[r]etaliation" as a basis for her claims. Dkt. 38-1 § III.1.d. "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190; *see also S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (same elements for Rehabilitation Act claim); *Krane v. Cap. One Servs., Inc.*, 314 F. Supp. 2d 589, 610 (E.D. Va. 2004) (same elements for ADEA retaliation claim).

Here, Plaintiff's retaliation claim fails for several reasons. First, Plaintiff's Amended Complaint contains no allegation that she engaged in any protected activity, let alone specific dates of any protected activity. *See Guillen*, 2020 WL 3965007, at *1 (dismissing retaliation claim where there was a "lack of clarity" regarding the timing of Plaintiff's alleged protected activity, which "is particularly problematic in the context of a retaliation claim"). Second, even if Plaintiff's non-exhausted allegations regarding her employment being terminated twice in 2010 and 2013 could serve to establish the adverse action element, Plaintiff does not allege that those actions (or

any other actions) were taken on the basis of her engaging in any protected activity. As such, Plaintiff's retaliation claim will be dismissed for failure to state a claim.

### iv. The hostile work environment claim.

Construing Plaintiff's allegations liberally, the Amended Complaint appears to add a new claim for hostile work environment. In particular, Plaintiff alleges "harassment," citing an instance where an individual named Huyelinh L. Stephenson was hired around the same time as Plaintiff, was allegedly chosen "[d]ue to favoritism and nepotism," and then "violated . . . Plaintiff's right to have privileges based on seniority . . . ." Dkt. 38-1 § III.1.d. As an initial matter, these allegations have not been administratively exhausted for the reasons explained *supra*. And, in any event, Plaintiff fails to plausibly allege any facts showing that she suffered harassment on the basis of a protected characteristic, let alone that such harassment was sufficiently severe or pervasive.

"To state a hostile work environment claim, [a plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998)) (setting out the standard for Tile VII and ADEA claims); *see also Pueschel v. Peters*, 577 F.3d 558, 564 (4th Cir. 2009) (applying the same framework to hostile work environment claims raised under the Rehabilitation Act).

In the instant case, Plaintiff's Amended Complaint is bereft of any allegations suggesting that the harassment Plaintiff purportedly experienced was based on her race, gender, color, religion, sex, age, or disability. As the Fourth Circuit explained when affirming the denial of a hostile work environment claim, "only harassment that occurs because of the victim's [protected

15

class] is actionable." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997); *see also Bass*, 324 F.3d at 765 (affirming dismissal of hostile work environment claims where the plaintiff's complaint was "full of problems she experienced with her co-workers and supervisors" but "[did] not seem to have anything to do with gender, race, or age harassment").

Plaintiff's hostile work environment claim also fails because she does not adequately plead allegations that come close to clearing the "high bar" required to show severe or pervasive hostile conduct. *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "Hostile environment claims are different in kind from discrete acts" and "are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Mogran*, 536 U.S. 101, 115 (2002). As such, a plaintiff must allege facts showing that her workplace was "permeated with discriminatory intimidation, ridicule, and insult." *Pueschel*, 577 F.3d at 565. In short, "[t]he harassment must be extreme." *Wells v. Gates*, 336 F. App'x 378, 388 (4th Cir. 2009). And relevant here, "[s]imply labeling [actions] from [plaintiff's] supervisor[s] as 'harassing' does not make them so." *Dawson v. Delta Air Lines, Inc.*, 2018 WL 5316004, at *5 (E.D. Va. Oct. 26, 2018).

The gravamen of Plaintiff's harassment-related allegations is that another employee was shown favoritism to Plaintiff's detriment. However, it is well-settled that a "hostile work environment claim fails" when it is "based on professional frustrations, not personal . . . attacks [based on protected status]." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 191 (4th Cir. 2004). Accordingly, Plaintiff's hostile work environment claim will be dismissed for failure to state a claim.

### B. The OSHA Claim

Apart from her claims under the federal anti-discrimination statutes, Plaintiff also brings an OSHA claim. As an initial matter, Plaintiff does not identify how the federal government has

waived its sovereign immunity from suit under OSHA.  Such an omission is fatal to her OSHA claim because "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see also Patock v. Fox News Television Channel*, No. 1:11-cv-974, 2012 WL 695892, at *2 (E.D. Va. Mar. 1, 2012) (explaining that "[c]ourts generally do not have subject matter jurisdiction over claims against the federal government and its agencies due to the doctrine of sovereign immunity," and, "[a]s such, [a][p]laintiff must establish that the claims asserted are authorized by a statutory waiver of sovereign immunity").

Plaintiff's OSHA claim also fails for the independent reason that OSHA does not provide a cause of action to litigants in federal court.  *See Clark v. Velsicol Chem. Corp.*, 944 F.2d 196, 197 (4th Cir. 1991) (holding that OSHA is a purely regulatory provision and does not create a private right of action); *Harik v. Wilson*, No. CV AW-05-1182, 2006 WL 8457020, at *1 (D. Md. May 15, 2006) ("[A] plaintiff may not premise a cause of action for damages upon a violation of an OSHA standard.").  Accordingly, Plaintiff's OSHA claim will be dismissed for lack of subject-matter jurisdiction.

### C. The FECA Claim

The Court next addresses Plaintiff's FECA claim.  "A FECA claim is the appropriate remedy when a federal employee's 'injuries are sustained while in the performance of his duty as a federal employee.'" *Richards v. C.I.A.*, 837 F. Supp. 2d 574, 579 (E.D. Va. 2011) (quoting *Wallace v. United States*, 669 F.2d 947, 951-52 (4th Cir.1982)).  But, as the Fourth Circuit has observed, FECA is an "exclusive remedy" and the Secretary of Labor has "exclusive authority to administer FECA and to decide all questions arising under FECA, including eligibility for benefits." *Wallace*, 669 F.2d at 951.  As such, "if a claim is covered by FECA, the federal courts

have no subject matter jurisdiction to entertain the case." *Aponte v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco, & Firearms*, 940 F. Supp. 898, 900 (E.D.N.C. 1996); *see also Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) ("[Employees are guaranteed the right [under FECA] to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."). Accordingly, Plaintiff's FECA claim will be dismissed for lack of subject matter jurisdiction.

### D. The VHRA Claim

Finally, the Court turns to Plaintiff's claim brought under the VHRA, Virginia's state law analogue to Title VII. *See Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 522 n.13 (4th Cir. 2000) (describing the VHRA as explicitly incorporating federal anti-discrimination law). To begin with, Plaintiff has identified no waiver of sovereign immunity by the federal government as to any claims under this state statute. *See Meyer*, 510 U.S. at 475 ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). What's more, any discrimination or retaliation claims that Plaintiff purports to bring under state law are precluded by the federal anti-discrimination statutes. *See Pueschel v. United States*, 369 F.3d 345, 348 (4th Cir. 2004) (explaining that Title VII "establishes the exclusive and preemptive scheme under which federal employees can seek redress for employment discrimination"); *Lassiter v. Reno*, 885 F. Supp. 869, 872 (E.D. Va. 1995) (dismissing disability discrimination claim under the VHRA as "the Rehabilitation Act provides the exclusive means of redressing claims of handicap discrimination in federal employment"). Accordingly, Plaintiff's VHRA claim will be dismissed for lack of subject-matter jurisdiction.

\*   \*   \*

Ultimately, the Court concludes that Plaintiff has brought no colorable claims against Defendant under the federal anti-discrimination statutes, OSHA, FECA, or the VHRA. With respect to the Title VII, ADEA, and Rehabilitation Act claims, the Court finds that dismissal with prejudice is warranted because Plaintiff has filed two iterations of her Complaint and yet still remains unable to plausibly plead her claims. *See Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) ("In the Eastern District of Virginia, an amendment may be considered futile where [p]laintiffs have previously had two full opportunities to plead their claim."). Dismissal of Plaintiff's ADA, OSHA, FECA, and VHRA claims will be without prejudice, however, because those claims fail on jurisdictional grounds. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." (citations omitted)).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 41) is GRANTED; Plaintiff's Title VII, ADEA, and Rehabilitation Act claims are DISMISSED WITH PREJUDICE and Plaintiff's ADA, OSHA, FECA, and VHRA claims are DISMISSED WITHOUT PREJUDICE.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within sixty (60) days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff

wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court of Appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff, who is proceeding *pro se*, and to counsel of record for Defendant. The Clerk is further directed to close this civil action.

It is SO ORDERED.

Alexandria, Virginia  
June 20, 2024

/s/  
Rossie D. Alston, Jr.  
United States District Judge